**DELHI–TAYLOR OIL CORPORATION, Petitioner,**

v.

**Will Ray HENRY, Respondent.**

**No. A–11582.**

Supreme Court of Texas.

May 31, 1967.

Rehearing Denied July 14, 1967.

Keys, Russell, Watson & Seaman, James C. Watson, Corpus Christi, for petitioner.

Hubert L. Stone, Jr., Auforth & Bonniwell, Fred C. Auforth, Corpus Christi, for respondent.

CALVERT, Chief Justice.

We granted writ of error in this case to review the holdings of the court of civil appeals with reference to the duty owed by an occupier of land to warn invitee-employees of an independent contractor of dangers on the premises which are not open and obvious.

Respondent, Will Ray Henry, an employee of Roy Vickers Lease Service, an independent contractor, suffered severe in-

juries while prosecuting the work of his employer on premises under the control of petitioner, Delhi-Taylor Corporation. Henry was engaged in welding operations when a dragline bucket, operated by another Vickers' employee, punctured one of Delhi-Taylor's pipelines which contained toluene, a highly flammable gas. The gas escaped and drifted into a ditch where Henry was working with his welding torch. The gas ignited and Henry was badly burned. His suit for damages was tried to a jury. The jury found that Delhi-Taylor negligently failed to inspect the toluene line to determine the amount of pressure therein before the dragline was used to uncover it, and negligently failed to release the pressure on the toluene line before the dragline was used to uncover it, and further found that such negligent omissions were proximate causes of the plaintiff's injuries. The trial court rendered judgment on the verdict awarding Henry a recovery of his damages as found by the jury. The court of civil appeals affirmed. 403 S.W.2d 885. We reverse the judgments of the courts below and here render judgment that the plaintiff take nothing.

Delhi-Taylor owns a refinery at Corpus Christi and owns and operates sixteen pipelines which carry various hydrocarbons from the refinery to the docks on the ship channel. The lines varied from two to sixteen inches in diameter and were buried in the ground at depths varying from four inches to ten feet. Roy Vickers Lease Service was employed by Delhi-Taylor to extend the casings around the pipelines where such lines passed under a private roadway. A dragline was used to uncover a twenty-four inch casing by digging a ditch three feet wide, ten feet deep and twenty-seven feet long. Some of the dirt removed in cutting the ditch was dumped temporarily over some of the other pipelines. Henry went into the deep ditch to weld the casing. The dragline operator then began to use the machine to remove the dirt covering the other lines. It was during this operation that the line containing the toluene was

punctured. Toluene was not under pump pressure in the pipeline when it was punctured; that which was in the line was residual and the pressure which caused it to spurt out of the line was static pressure, with some slight pressure from thermal expansion.

■ Vickers and his employees were on the premises as business invitees of Delhi-Taylor. The law is now well established in this State that an owner or occupier of land may relieve himself of liability for harm to his invitees from dangerous conditions on the premises which are not open and obvious by taking proper precautions to protect them from the dangers or by warning them thereof. Halepeska v. Callihan Interests, 371 S.W.2d 368 (Tex.Sup. 1963); Western Auto Supply Co. v. Campbell, 373 S.W.2d 735 (Tex.Sup.1963). The law is equally well established that the owner or occupier owes no duty to his invitees either to eliminate or to warn of dangerous conditions on the premises which are as well known to them as they are to him. McKee v. Patterson, 153 Tex. 517, 271 S.W. 2d 391 (1954); Hall v. Medical Bldg. of Houston, 151 Tex. 425, 251 S.W.2d 497 (1952). In this context of established law, Delhi-Taylor contends here, as it did in the court of civil appeals, that although it may have failed, as the jury found, to take reasonable precautions to protect Henry from the danger of gas escaping from its pipelines, it is nevertheless not liable to Henry because its duty to warn him of the danger was fully discharged by warning given to and knowledge on the part of Henry's employer and his employer's foreman.

The court of civil appeals seems to have assumed that an adequate warning of the danger given to Vickers or to Vickers' foreman would have discharged Delhi-Taylor's duty to Henry; but that court held that the evidence did not establish as a matter of law that the warning given was adequate, and that Delhi-Taylor waived its right to a fact finding on adequacy by failing to request a jury issue thereon. We do not

agree with the holding of the court of civil appeals. It is our opinion that the evidence establishes conclusively that the dangerous condition on the premises which resulted in injury to Henry was, in the light of the warning given, as well known to Vickers and his superintendent-foreman, Bernie B. Smith, as it was to Delhi-Taylor.

Both Vickers and Smith had many years' experience in working on and around pipelines carrying petroleum products. Vickers had devoted a good bit of his time during fifteen years in the business to work which "necessitated the uncovering of buried lines," and was "thoroughly familiar with the work." According to him, it is "a fairly common practice" to uncover pipelines with a dragline, and "lots of times" he had used a dragline to uncover "loaded lines" or "gas lines under pressure." Smith had been district superintendent for Vickers for five years and had seventeen years' experience working around loaded pipelines. He had worked for a number of employers and had been a pipeline superintendent where he "had a double dose of loaded lines." According to Smith, the precautions to be taken when working around pipelines are standard, i. e., " * * * any existing line, you assume to be loaded * * *."

The very work which Vickers undertook for Delhi-Taylor was the uncovering of the dock loading lines and the placing of the lines in casings. Both Vickers and Smith were shown a plat of the lines before the work began. They knew the horizontal position but not the depth of the several lines. Smith knew of the general location of the lines from work done at the Delhi-Taylor plant on a prior occasion. He testified that everybody who worked around there knew the area as "pipeline alley."

Robert F. Wright who represented Delhi-Taylor in negotiating the contract with Vickers, testified that he made clear to Vickers and Smith that some of the lines would be in use carrying inflammable hydrocarbons while the work was being done; and that both were told that they should treat all the lines "as though they were loaded" and "as if they were under pressure." His testimony was not denied by either Vickers or Smith. Indeed, Smith confirmed the warning; he testified that Mr. Perkinson, Delhi-Taylor's foreman, "certainly did" make it "pretty clear that those lines were loaded"; that "Everybody knew it." As a matter of fact, Smith testified that he warned the dragline operator that "the lines were loaded," which, "in pipeline work," means "that the line is dangerous" and can be carrying any kind of "inflammable material," including "gasoline or natural gas."

■ On the basis of the evidence set out, we hold that the warning given to Vickers and his foreman that the lines should be treated "as though they were loaded," when considered with their knowledge of the condition of the premises and the dangers inherent therein, was adequate to discharge Delhi-Taylor's duty to Vickers and his foreman. This holding brings us face to face with the question of whether an adequate warning to an independent contractor or one supervising his work will discharge the duty of the landowner or occupier to warn the employees of the independent contractor; and we hold it will.

■ Our holding here is diametrically opposed to the holding made in Galveston-Houston Elec. Ry. Co. v. Reinle, 113 Tex. 456, 258 S.W. 803 (1924); and to hold as we do in this case, we must, and do, overrule that decision. In that case Reinle, an employee of an independent contractor performing services for Galveston-Houston Electric Ry. Co., was electrocuted when a boom he was operating came in contact with, or in close proximity to, an uninsulated high-voltage wire. We gave the following answer to a question certified by the court of civil appeals (258 S.W. 806):

"The court answers that it was the duty of the interurban company to exercise ordinary care to give Reinle notice or warning of the danger of the boom com-

ing in contact with, or in close proximity to, the uninsulated high-voltage wires, notwithstanding Reinle was an employee not of the interurban company, but of the independent contractor, who possessed full knowledge of the danger."

Our opinion in *Reinle* and the record in the case on file with this court show that the issue decided was squarely presented. There is no sound basis for distinguishing that case from the instant case. *Reinle* must either be followed or overruled. With due respect for the rule of *stare decisis,* we are convinced that the rule of *Reinle* imposes an unfair and, indeed, an intolerable burden on an owner or occupier of land who employs an independent contractor to do work or to perform services on the premises. While an owner owes a duty to employees of an independent contractor to take reasonable precautions to protect them from hidden dangers on the premises or to warn them thereof, an adequate warning to or full knowledge by the independent contractor of the dangers should and will be held to discharge the landowner's alternative duty to warn the employees.

There is no need to write at length in justification of our holding. It is in harmony with late court of civil appeals decisions. See Tyler v. McDaniel, 386 S.W.2d 552 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.) ; Texas Elec. Serv. Co. v. Holt, 249 S.W.2d 662 (Tex.Civ.App.—Fort Worth 1952, writ ref'd n. r. e.). It is in harmony with two late decisions of the United States Court of Appeals for the Fifth Circuit. See Gulf Oil Corp. v. Bivins, 276 F.2d 753 (5th Cir. 1960) ; Turner v. West Texas Util. Co., 290 F.2d 191 (5th Cir. 1961). It is also in harmony with a number of decisions from other jurisdictions. See Storm v. New York Tel. Co., 270 N.Y. 103, 200 N.E. 659 (1936) ; Schwarz v. Gen. Elec. Realty Corp., 163 Ohio St. 354, 126 N.E.2d 906 (1955) ; Levesque v. Fraser Paper Ltd.,

159 Me. 131, 189 A.2d 375 (1963) ; Hunt v. Laclede Gas Co., 406 S.W.2d 33 (Mo.Sup. 1966). The rationale for the holding can be found in the cited cases.

On many projects there are a number of independent contractors, each employing scores of workmen. The identities of some of the workmen will change from day to day. To impose the duty on the owner or occupier of the premises to know and to warn every workman on the project of a dangerous condition would subject him to an impossible burden. Moreover, an independent contractor owes a duty to his employees to warn them of dangers on the premises where they are required to work which are known to him. This duty was recognized in *Reinle.* 258 S.W. 803, 805. The owner or occupier should not be required to foresee and anticipate that the contractor will not discharge his duty to his own employees, and there is no sound basis for requiring that the employees should be twice warned.

The burden was on Henry to establish that Delhi-Taylor breached a duty owed him. McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954). He obtained jury findings that Delhi-Taylor was negligent in failing to take precautions to protect him from the danger of gas escaping from its pipeline. These findings did not establish that Delhi-Taylor had breached a duty owed him inasmuch as the duty owed him could be discharged by warning him of the danger. Not only did Henry fail to obtain a jury finding of breach of the duty to warn, but the evidence establishes conclusively, as pointed out herein, that the duty was not breached. The judgment in Henry's favor cannot stand.

The judgments of trial court and court of civil appeals are reversed and judgment is here rendered that plaintiff take nothing.