**KOPPERS COMPANY, INC., et al.,**
**Appellants,**

v.

**Robert H. HAGGERTY, Appellee.**

**No. 7399.**

Court of Civil Appeals of Texas,
Beaumont.

Dec. 7, 1972.

Rehearing Denied Dec. 28, 1972.

Dale Dowell, Rienstra, Rienstra & Dowell, Beaumont, for appellants.

Gilbert Adams, Sr., Kyle Wheelus, Beaumont, Jack W. Tucker, Houston, for appellee.

KEITH, Justice.

The appeal is from a judgment entered in a third party action against a general contractor for injuries received by an employee of a subcontractor upon the construction project. Koppers was the general contractor engaged in erecting a multistory building and had entered into a contract with Bella Company as subcontractor to do the brick work upon the structure. Haggerty was an employee of Bella at the time he sustained his injuries. Having received his compensation benefits, Haggerty sued Koppers alleging several grounds of negligence proximately causing his injury and damage. Koppers answered and sought indemnity under its contract with Bella. The workmen's compensation insurance carrier intervened asserting its subrogation rights in the event plaintiff prevailed.

In a trial to a jury, plaintiff procured findings of negligence against Koppers proximately causing his injury and damage. No contributory negligence on the part of plaintiff was established by jury findings. Koppers failed to procure jury findings upon which to predicate its claim for indemnity against Bella. Koppers' motion for judgment non obstante veredicto and to disregard certain findings was overruled and judgment entered for plaintiff and intervenor against Koppers and denying Koppers indemnity against Bella.

Clyde DeLord was the bricklayer general foreman employed by Bella and he described his job as "coordinator" of the several crafts employed by Bella upon the job. Tommy Wilson was Bella's bricklayer foreman, having supervision over the carpenters, laborers and bricklayers. Nolan Guilbeau was the carpenter foreman employed by Bella and it was his duty to erect the scaffolds upon which the bricklayers stood in performing their tasks. Plaintiff Haggerty was employed as a mason tender but was assigned to the carpenter gang under Guilbeau in the erection of the scaffolds.

At the time Haggerty received his injuries, there were many workmen upon the job site including employees of other subcontractors such as electricians, pipefitters, etc. Bella's two supervisors, Wilson and Guilbeau, were scrounging for a sheet of plywood for use in the construction of a scaffold when they saw one lying on the floor. We now quote from Wilson's testimony:

"We picked the thing [the sheet of plywood] up and started off with it and after we took a few steps and I looked down and I saw a hole there and I said 'Well, there's a hole under here and we had better cover it back because somebody will walk into it'. So we took and laid it back where it was. He [Guilbeau] took off, the best I can remember, he took off to get a sheet of plywood or something."

Wilson was rather vague as to the precise time when this discovery was made. He did fix the discovery as the same day of the accident and continued:

"Well, it was shortly after work time, I don't know, maybe 8:00 or 9:00 o'clock, something like that. We went to work at 7:30, I think. Maybe it was 9:00 or 9:30. I don't remember exactly what time it was."

Haggerty fixed the time of his accident as about 10:30 in the morning and said that he was instructed by Guilbeau to get a piece of plywood for use in extending the scaffold upon which the bricklayers were to work. Haggerty saw this particular piece of plywood nearby and picked it up with the intention of bringing it back to Guilbeau for use on the scaffold. He was in an awkward position as he picked up the board and he fell through the hole. Guil-

beau was only about five or six feet away from where the board was lying and did not warn Haggerty that the board was concealing a hole.

Plaintiff established that other openings in the floor of the building under construction were barricaded with two-by-fours and ropes, but that there was no warning of the existence of the particular hole through which he fell. Neither DeLord, Wilson, Guilbeau, nor anyone from Koppers had advised Haggerty of the existence of this particular hole.

Guilbeau, corroborating Wilson as to the discovery of the hole in the floor, was even more vague as to the time of the discovery with reference to the time of Haggerty's injury. He said that the discovery of the hole "was either the day before or the same day we looked in it, me and Tommie [Wilson] . . . . It could have been the day before [Haggerty's accident] we looked at it, or it could have been the same day, I really don't recall." Neither Wilson nor Guilbeau advised DeLord of their discovery of the hole.

Haggerty had been upon the job for several months and had actually used the plywood cover over the hole through which he later fell. On some occasions he had pushed a "Georgia buggy" (an extra large wheelbarrow) loaded with mortar over the very piece of plywood, the removal of which brought about his personal downfall.

There is no dispute in the evidence that supervisory employees of Bella had actual knowledge of the existence of the dangerous condition on Koppers' premises before Haggerty was injured. We have previously indicated that the time element is rather vague, but such knowledge was at least one hour before the accident, accepting the shortest period of time of either witness.

■ The foregoing résumé of the evidence brings us to the decisive and controlling opinion of the Supreme Court upon this set of facts, Delhi-Taylor Oil Corporation v. Henry, 416 S.W.2d 390 (Tex.Sup. 1967). Here, as in *Delhi-Taylor*, Haggerty obtained jury findings that Koppers was negligent in failing to take precautions to protect him from the dangerous condition on its premises. The burden was on Haggerty to establish that Koppers breached a duty owed him. The rule governing this case is set out in these words from *Delhi-Taylor*:

> "While an owner owes a duty to employees of an independent contractor to take reasonable precautions to protect them from hidden dangers on the premises or to warn them thereof, an adequate warning to *or full knowledge* by the independent contractor of the dangers should and will be held to discharge the landowner's alternative duty to warn the employees." (416 S.W.2d at 394) [1]

■ Koppers' duty to Haggerty, under the undisputed evidence in this record, was discharged by the "full knowledge by the independent contractor of the dangers." Thus, in the language of *Delhi-Taylor*, "the evidence establishes conclusively, as pointed out herein, that the duty [of Koppers to Haggerty] was not breached." Id.

Plaintiff's resourceful counsel, seeking to avoid the controlling effect of the authoritative decision just quoted, contends that he may still recover upon the basis of the jury findings that there was not a reasonable time for Wilson or Guilbeau to notify Haggerty of the concealed danger before Haggerty fell. We quote the issues in the margin.[2]

---

1. All emphasis herein has been supplied unless otherwise indicated.

2. Identical issues, Nos. 10 and 12, were submitted separately as to Wilson and Guilbeau conditioned upon an affirmative finding that each had discovered the hole before Haggerty fell, the issues reading:
"Do you find from a preponderance of the evidence that the time elapsing between the discovery by Tommy Wilson [or Nolan Guilbeau] of the hole under

Plaintiff cites to us no cases which establish his right to recover under the issues quoted in footnote 2, supra. We readily concede that for the owner or occupier of premises to discharge the duty owing by it to the employees of an independent contractor, there must be warning or knowledge of the danger in sufficient time for the contractor to discharge the duty which then devolves upon it. At the time when Wilson and Guilbeau learned of the dangerous condition then existing upon Koppers' premises, the duty of Koppers was discharged. At that point in time, the duty was upon Bella to notify its employees of the dangerous condition. The law will imply that a reasonable time must elapse within which to discharge the duty to warn its employees of such danger. Cf. Hunt v. Laclede Gas Company, 406 S.W.2d 33, 36 (Mo.Sup.1966), (cited in *Delhi-Taylor,* supra), where only five to seven minutes was involved.

Guilbeau, a supervisor for Bella, was in the very area of the concealed hole and had full knowledge of the existent dangerous condition. Without warning Haggerty of the hole, he directed him to procure a piece of plywood. Guilbeau was physically present and had the duty to warn Haggerty, yet this duty was breached. At least an hour had elapsed from the time of the fortuitous discovery before Haggerty's accident. We hold, under the circumstances of this case, that Koppers' duty to Haggerty had been discharged. At the time of Haggerty's accident, Koppers breached no duty it owed to him.

We hold, as a matter of law, that an hour was a reasonable time within which Bella's supervisors could have notified Haggerty of the dangerous condition upon Koppers' premises. This knowledge and

appreciation of the dangerous condition, discharged "any duty, as a matter of law, on the part of appellee to warn appellant." Keeth v. Phillips Petroleum Company, 482 S.W.2d 291, 294 (Tex.Civ.App., Amarillo, 1972, error ref. n. r. e.).

Under the circumstances of this case, we hold, as a matter of law, that there was no evidence to support the answers of the jury to Special Issues Nos. 10 and 12 quoted in footnote 2, supra.

This disposition of the appeal makes it unnecessary for us to discuss the points of error assigned against Bella under the terms of the indemnity agreement.

It becomes our duty, therefore, to enter the judgment which should have been rendered by the trial court. The judgment in favor of Bella denying Koppers indemnity is affirmed. Plaintiff's judgment against Koppers is reversed and judgment now rendered that plaintiff take nothing as against Koppers. All costs are adjudged against the plaintiff and the intervenor, jointly and severally.

Affirmed in part and reversed and rendered in part.

DIES, Chief Justice (dissenting).

I respectfully dissent. I would affirm the judgment of the trial court.

The majority opinion holds that Delhi-Taylor Oil Corporation v. Henry, supra, is dispositive of the case we review. I do not so regard it. Certainly *Delhi-Taylor* does hold that "an owner or occupier of land may relieve himself of liability for harm to his invitees from dangerous conditions on the premises which are not open and obvious by taking proper precautions

---

the plywood board until the time Robert Haggerty picked up the board, under the circumstances then obtaining, was not a reasonable length of time for Tommy Wilson [or Nolan Guilbeau] either to notify Robert Haggerty that there was a hole under the plywood board or to take such remedial action as would rea-

sonably have protected Robert Haggerty from the danger, if any, occasioned by the existence of the hole under the plywood board?"
In each instance, the jury answered:
"It was not a reasonable length of time."

to protect them from the dangers or by warning them thereof." (416 S.W.2d at 392) However, there are important differences in the fact situation of *Delhi-Taylor,* in my judgment, and this case.

"Both Vickers and Smith had many years' experience in working on and around pipelines carrying petroleum products. Vickers had devoted a good bit of his time during fifteen years in the business to work which 'necessitated the uncovering of buried lines,' and was 'thoroughly familiar with the work.' According to him, it is 'a fairly common practice' to uncover pipelines with a dragline, and 'lots of times' he had used a dragline to uncover 'loaded lines' or 'gas lines under pressure.' Smith had been district superintendent for Vickers for five years and had seventeen years' experience working around loaded pipelines. He had worked for a number of employers and had been a pipeline superintendent where he 'had a double dose of loaded lines.' According to Smith, the precautions to be taken when working around pipelines are standard, i. e., '* * * any existing line, you assume to be loaded * * *.'

"The very work which Vickers undertook for Delhi-Taylor was the uncovering of the dock loading lines and the placing of the lines in casings. Both Vickers and Smith were shown a plat of the lines before the work began. They knew the horizontal position but not the depth of the several lines. Smith knew of the general location of the lines from work done at tthe Delhi-Taylor plant on a prior occasion. He testified that everybody who worked around there knew the area as 'pipeline alley.'

"Robert R. Wright who represented Delhi-Taylor in negotiating the contract with Vickers, testified that he made clear to Vickers and Smith that some of the lines would be in use carrying inflammable hydrocarbons while the work was being done; and that both were told that they should treat all the lines 'as though they were loaded' and 'as if they were under pressure.' His testimony was not denied by either Vickers or Smith. Indeed, Smith confirmed the warning; he testified that Mr. Perkinson, Delhi-Taylor's foreman, 'certainly did' make it 'pretty clear that those lines were loaded'; that 'Everybody knew it.' As a matter of fact, Smith testified that he warned the dragline operator that 'the lines were loaded,' which, 'in pipeline work,' means 'that the line is dangerous' and can be carrying any kind of 'inflammable material,' including 'gasoline or natural gas.'" (Id. at 393)

I have quoted at length from *Delhi-Taylor* because, in my view, a much stronger case of warning to the injured invitee exists than the case we review.

In our case, Koppers, the owner-occupier, did nothing whatsoever to apprise Haggerty or his supervisor of the hidden danger. So to impose *Delhi-Taylor,* we must impute a fortuitous discovery by Haggerty's supervisor to Haggerty, who admittedly had no actual notice of the hazard. Surely before imposing such a harsh doctrine we must satisfy ourselves that this discovery by Haggerty's supervisor was under such conditions and in time to make this imputed knowledge to Haggerty reasonable and wise. In my view, the jury's findings that this discovery by Haggerty's supervisor was not a reasonable length of time from Haggerty's injury to warn him was supported by the evidence and so believing, I have concluded that the jury's verdict should be upheld.