**Hallie STEPHENS et al., Appellants,**

v.

**TEXAS ELECTRIC SERVICE COMPANY, Appellee.**

**No. 4279.**

Court of Civil Appeals of Texas.

Eastland.

Jan. 17, 1969.

Rehearing Denied Feb. 7, 1969.

Warren Burnett and Bob Hoblit, Odessa, for appellants.

Virgil T. Seaberry, Jr., Turner & Seaberry, Eastland, for appellee.

COLLINGS, Justice.

Hallie Stephens, individually and as next friend for her two minor children, brought suit against the Texas Electric Service Company, seeking to recover damages for the death of Earl Roy Stephens, Jr., husband and father, respectively, of plaintiffs. Based upon the pleadings, affidavits and a deposition on file, a summary judgment was granted for the Texas Electric Service Company. The plaintiffs have appealed.

Appellant, Hallie Stephens, alleged in her petition as plaintiff that her husband Earl Roy Stephens, while installing goal posts at the football stadium of the Gorman High School, came in contact with energized electric wires maintained by appellee and as a result thereof received severe shocks to his body which resulted in his death; that appellee was guilty of specified acts of negligence, particularly in the hazardous location of its electric lines which proximately caused the injury and resulting death of Mr. Stephens. Appellee answered by special exceptions, a general denial and allegations that its electric lines were properly constructed and maintained; that the existence and location of said lines were open and obvious; that the danger of coming into contact with lines with the metal boom used by Earl Roy Stephens on the occasion in question was open and obvious; that he knew and appreciated or was charged with knowledge and appreciation of such danger and that the doctrine of volenti non fit injuria barred any recovery by appellants. Appellee also alleged that Mr. Stephens was guilty of several specific acts of contributory negligence.

We overrule appellants' point contending that the court erred in rendering summary judgment against them because the evidence raised material issues of fact on the question of negligence on the part of appellee proximately causing the death of Earl Roy Stephens. The doctrine volenti non fit injuria, when applicable, precludes recovery by a plaintiff even though the defendant is guilty of negligence proximately causing the injury. Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607; Robert E. McKee, General Contractor, Inc. v. Patterson, 153 Tex. 517, 271 S.W.2d 391.

Appellee's motion for summary judgment was based upon the pleadings on file and the attached affidavits of Gene Plaunty and J. W. Hogan, and the deposition of

Mrs. Hallie Stephens. Appellee asserts that such pleadings and exhibits conclusively show that any recovery sought by appellants is barred by the doctrine volenti non fit injuria, in that, the deceased, Earl Roy Stephens, actually knew and appreciated the danger involved in carrying out his activities in close proximity to the electric lines in question resulting in his death and that he voluntarily exposed himself to and assumed the risk of such danger.

In appellants' supplemental brief it is urged that the affidavits and deposition relied upon by appellee to establish its defense under the volenti doctrine do not support the summary judgment rendered. They contend that there are material issues of fact concerning appellee's liability which are not negatived by appellee's proof. They asserted in their affidavit in opposition to appellee's motion for summary judgment that a material issue of fact existed concerning whether the deceased, Earl Stephens, or any instrument under his control ever made physical contact with appellee's energized lines. They here assert, in effect, that the danger and hazard which caused the death of the deceased was the capacity of electricity to arc from an electric line to an object with which the line is not in contact and to thereby electrocute a person who is in contact with such object and that there is an issue of fact as to whether the deceased had knowledge of and appreciated such specific danger and hazard.

The doctrine of volenti non fit injuria is an affirmative defense. When the doctrine is applicable it is held that a plaintiff may not recover for injuries received through voluntary exposure to a known and appreciated danger. Halepeska v. Callihan Interests, Inc., (Sup.Ct.), 371 S.W.2d 368. We are of the opinion that, contrary to appellant's contention, appellee's proof established as a matter of law that the deceased Earl Roy Stephens had knowledge of and appreciated the hazard which resulted in his death and that he voluntarily exposed himself to that danger. The location of appellee's electric lines over the football field and the fact that they were dangerous is not in dispute. The affidavit of appellee's employee, Hogan, asserts the existence of such facts. Although Hogan was an interested witness, appellants' pleadings also show such facts. The allegations of plaintiff's petition further show that the deceased while installing the goal posts came into close proximity with such electric lines and as a result thereof sustained the injury which caused his death.

The affidavit of Mr. Plaunty and the deposition of Mrs. Stephens clearly show that the deceased knew generally of the danger of electricity and also knew the danger involved in working near an electric line; that he was aware of the location of the lines in question and of the danger involved in raising the boom under such lines; that he had discussed the danger with his partner Plaunty and had agreed with Plaunty that because of such danger the boom should not be raised at the location south of the goal post which was under appellee's electric lines. This was the very location where the proof shows that the deceased did attempt to raise the boom.

The affidavit of J. E. (Gene) Plaunty stated that he and Earl Roy Stephens, Jr., at the time of his death, were partners in the welding business in Gorman, Texas; that on July 24, 1967, he and Mr. Stephens went to the south end of the Gorman High School football field to put up a goal post which they had overhauled; that they had put up one goal post about two weeks prior thereto but did not then put up the one here involved because the football field at the place where it was to be installed was wet from watering the grass. Plaunty stated that when they got to the football field on July 24, 1967, he had forgotten some of his equipment and left Mr. Stephens at the field while he went to pick up such equipment; that he was gone some five or six minutes and when he came in at the north gate to the football field he saw a puff of

smoke come from the truck upon which the deceased was working on the goal post; that he was about 130 yards away when he first saw the smoke. Mr. Plaunty stated that he kept on driving toward the truck and was about half way there when he saw Mr. Stephen's body fall away from the back of the truck where he was standing. He stated that at that time the gin poles on the truck were raised at an angle of probably less than forty-five degrees; that he saw one of the electric wires behind the goal post was drawn or sucked down to the gin poles, and that when Mr. Stephen's body fell away from the truck the electric wire turned loose from the gin poles and started going up and down; that after the wire got still again it was some four feet from the gin poles. He stated that he never saw the gin poles move and he believed that they were stopped when the accident happened; that he and Mr. Stephens had designed the truck and Mr. Stephens knew how to operate it; that affiant also knew how the truck operated and knows from how the truck operates that Mr. Stephens did not raise the poles into the wire; that if he had raised the poles to a point where they hit the wire the poles would have kept going up; they would not have stopped unless Mr. Stephens had stopped them himself. He stated that he knew Mr. Stephens had stopped the poles at the place where they were stopped, and that the electric wire "was sucked down on the gin poles." Mr. Plaunty further stated that the electric lines in question were clearly visible; that there were three lines going between a pole on the east side of the field and a pole on the west side of the field, and that such lines ran east and west across the football field at a point south of the goal posts in question; that such lines were in the air well above the height of the goal posts and that the boom came in contact with the south line of the three lines. He stated that he did not know why Mr. Stephens attempted to raise the boom under the electric lines; that both he and Mr. Stephens were aware of the location of the lines and both knew the danger of bringing the boom into contact with the lines; that they had "fully discussed" this danger before any work was attempted; that they had waited ten days or two weeks before starting work in order to let the football field dry out so they could place the truck and boom on the north side of the goal posts in question where there were no electric lines; that because of the possibility of getting into the electric lines they had agreed that they could not attempt to raise the goal posts from the location south of the post where the truck was at the time Mr. Stephens was killed.

Mrs. Stephens stated in her deposition that the deceased knew that electricity was dangerous and that if one came into contact with an electric line he was likely to be killed or injured; that he had experience working with electricity in his welding business and in wiring his home; that he was very cautious in wiring his home and permitted no electrical connection to the house while he was doing such work; that in his fifteen years as head driller with an oil well drilling company he had refused to work on any rig near high lines because of his apprehension that some one could be killed or injured by the electricity and that he fully appreciated the danger involved in working near an electric line.

The proof in our opinion shows that the deceased Stephens knew and appreciated the danger involved in raising the boom under appellee's electric lines and that he voluntarily exposed himself to that danger. Montez v. Bailey County Electric Co-operative, 397 S.W.2d 108, (Ct.Civ.Apps., 1965, ref. n. r. e.); Howard v. Jackson Electric Co-operative, Inc., 430 S.W.2d 689, (Ct. Civ.Apps., 1968, ref. n. r. e.).

█ Appellants cite numerous cases in support of their contention that the doctrine of volenti non fit injuria does not here apply because they assert there was no knowledge of the specific danger involved. Appellants are correct in the contention that knowledge of the very hazard which results in injury and damage and appreciation by plaintiff of the specific danger involved

are essential elements to the application of the volenti doctrine. This principle of law as urged by appellants is correct and is supported by the numerous cases which they cite. Some of these cases are:

Ellis v. Moore, 401 S.W.2d 789, (Sup. Ct.); San Antonio Portland Cement Co. v. Chandler, 360 S.W.2d 165, (Ct.Civ.Apps., error ref'd); American Cooperage Co. v. Clemons, 364 S.W.2d 705, (CCA, error ref'd); Chickasha Cotton Oil Co. v. Holloway, 378 S.W.2d 695, (CCA, error ref'd); Socony Mobil Oil Co. v. Slater, 412 S.W.2d 349, (CCA, n. r. e.). In all of these cited cases the proof showed that the plaintiff had knowledge of the existence of one danger but did not have knowledge of another and different hazard or danger which caused his injury. These cases are not applicable to the facts of the instant case. The facts of the instant case are distinguishable from the facts of the cited cases in that in the instant case the proof shows that Mr. Stephens had actual knowledge and appreciation of the specific hazard which caused his death. The proof shows that the hazard which caused Mr. Stephen's death was the danger involved in working in close proximity to appellee's electric lines. The proof shows that he voluntarily exposed himself to that danger.

The facts of the Montez v. Bailey County Electric Co-operative, supra, are very similar to those of the instant case. The proof in the Montez case showed that the plaintiff knew electricity was dangerous, knew that the power lines around and in the vicinity of the irrigation wells were dangerous, and were dangerous if contact was made with them. A summary judgment was there sustained although the plaintiff showed by his affidavit that he did not know the voltage of the electric lines, that he thought the lines were insulated, that he did not know that the lines could be blown out of place, that he was concentrating on his work and did not realize that the boom was close to the lines or that the lines were blowing. In upholding the summary judgment the appellate court in that case stated in part as follows:

"* * * an examination of Montez' deposition and affidavit clearly show that while he denies specific knowledge as to insulation, amount of voltage, etc., he admits by deposition he saw the lines and realized they were dangerous. His affidavit does not repudiate these statements."

"* * * The undisputed facts show Montez actually had knowledge of the presence of the power lines and appreciated their danger. It therefore follows the defense of volenti non fit injuria applies. Montez, by his own statement, saw the power lines and admitted they were dangerous. He was fully aware of the close proximity of the power lines to the working area. This record clearly establishes the actual knowledge and appreciation of the danger by Montez to invoke the defense of volenti."

The undisputed facts in the instant case show that the deceased had knowledge of the existence and location of appellee's electric lines, that he had knowledge of and appreciated the danger of such lines and the danger of working in close proximity thereto. The proof shows that he was aware of the close proximity of the electric lines in question to the place where he was working and that by working in close proximity to such lines he voluntarily exposed himself to the danger involved. This proof was effective to invoke the doctrine volenti non fit injuria even though the proof did not preclude specific knowledge of certain aspects of the danger, that is, knowledge of the asserted capacity of electricity to arc from an electric line to an object with which the line was not in contact. Appellants' contention to the contrary is overruled.

The judgment is affirmed.