BIG BEND FLYING SERVICE, INC.,
Appellant,

v.

Josefa HINOJOS, Individually and in behalf
of her minor children, Natividad and Trini-
dad, and as Administratrix of the Estate of
Lasaro Hinojos, Deceased, Appellees.

No. 6278.

Court of Civil Appeals of Texas,
El Paso.

Jan. 10, 1973.

———◆———

James R. Kerr, Fort Stockton, Turpin, Smith, Dyer, Harman & Osborn, Max N. Osborn, Midland, for appellant.

Warren Burnett, Associated, Bob Hoblit, Odessa, for appellees.

## OPINION

RAMSEY, Chief Justice.

The opinion and judgment of this Court, dated the 15th day of November, 1972, is withdrawn and this opinion is substituted therefor.

This is an appeal from an order of the District Court of Culberson County, overruling Appellant's plea of privilege to be sued in Pecos County. We affirm.

The record reveals that Appellant, on July 15, 1968, was engaged in aerial spraying for cotton bollworms on a farm in Culberson County near Van Horn. Appellant was using an insecticide known as methyl parathion in its spraying operations. A farm worker named Lasaro Hinojos, who was working in the fields, became ill and was taken to a hospital in El Paso where he died the following day. The survivors of the deceased filed suit against Red Barn Chemical Company, the supplier of the chemical; R. T. Hoover and Company, the owner of the farm and employer of the deceased; and this Appellant, for conscious pain and suffering and for damages under the wrongful death statute. Appellees' petition alleged in part that Appellant was negligent "in failing to keep a proper lookout for the safety of Lasaro Hinojos; in failing to warn the Plaintiff's deceased that such dangerous and lethal insecticide spray was present in a harmful and dangerous amount in or about the area in which he was working."

Appellant filed its plea of privilege, and Appellees filed a controverting plea, alleging the action was properly brought in Culberson County under the provisions of Article 1995, Sections 9a and 29a, Vernon's Ann.Tex.Civ.St. The testimony adduced at the plea of privilege hearing and considered by the lower Court consisted of the facts that the deceased became ill after the area had been sprayed; that three or four children were also sick; that the symptoms exhibited by the deceased were consistent with those evidenced when methyl parathion was ingested by a human being; and that deceased was found in the field in pain.

■ Appellant contends in its first two points of error that Appellees failed to "establish a prima facie case of negligence upon the part of Appellant as required by Subdivision 9a of Article 1995," for two reasons: First, that Appellees failed to prove that Appellant breached a duty and, second, that if any duty was owed by Appellant to deceased that such duty was discharged either by a prior warning to deceased's supervisors and employer or knowledge of the existence of the danger.

As to the first contention, that status of the deceased was that of an employee and invitee. Appellant was likewise an invitee. Each owes a duty to prevent injury to the other through negligence. Snelling v. Harper, 137 S.W.2d 222 (Tex.Civ.App. 1940, writ dis.); Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.Sup.Ct.1964). We hold that a duty exists between invitees.

■■ As to the second contention, the law in this State has been well settled in Delhi-Taylor Oil Corporation v. Henry, 416 S.W.2d 390 (Tex.Sup.Ct.1967), that an owner or occupier of land may relieve himself of liability for harm to his invitees from dangerous conditions on the premises which are not open and obvious by warning them of the dangers. There is no duty to warn if the danger is as well known to the invitee as it is to the owner or occupier of the premises. The rules enunciated in

Delhi-Taylor Oil Corporation v. Henry, supra; Gulf Oil Corporation v. Bivins, 276 F.2d 753 (5th Cir., 1960); and Dees v. El Paso Products Company, 471 S.W.2d 630 (writ ref'd n. r. e.), further provide that such warning and knowledge to the employee's foreman suffices as warning and knowledge to the employee who might be injured as a result of the dangerous condition. In reviewing this record, we must then examine the evidence in regard to both the "warning" and "knowledge" on the part of the deceased's foreman.

Excerpts from cross interrogatories of Mr. David Holman, the District Manager for the chemical company, were introduced as to the warning. He stated that it was the "established procedure" to warn. When asked if such warning was given to any representative of the Hoover Farms, his answer was, "To the best of my knowledge, yes." When asked who gave such warning on behalf of the chemical company, his answer was, "Don Conoly, and he gave the information to Luis Martinez." No explanation appears in the record as to who Don Conoly is nor is there any testimony in the record by this individual saying that the warning was given. Portions of the deposition of Luis Martinez were introduced, and in regard to a warning the question was asked Martinez:

"Q. Were you ever advised by any of the persons where the pilots are as to the danger of the spray?

A. No, I don't believe anyone did, but I knew it beforehand.

Q. You knew this from your own knowledge of working on the farm?

A. Yes."

The testimony of one of the pilots was introduced to the effect that during the spraying operations, he saw some farmhands entering a field that he had just sprayed. The pilot testified that he landed on a paved road and told Luis Martinez that it was too soon for these people to be going into the field. Martinez stated that this never happened. A conflicting fact issue was then preesnted to the trial Court as to any warning.

We next consider the matter of knowledge. Luis Martinez testified that from prior experience he knew that a freshly sprayed field was dangerous. Obviously, knowledge that a given condition is dangerous is vastly different from knowledge that a dangerous condition actually exists. In this situation, the dangerous condition could only exist after the spraying, and apparently continues to exist for some time thereafter, though no definite estimate or opinion as to the length of time appears in the record. The District Manager for the chemical company, who had formerly worked for the Hoover Farms and who had a college degree in agriculture, testified that spraying was like warfare, and a decision to spray would not necessarily be scheduled in advance, but might well be a "spur of the moment decision." He further testified that when he was farm foreman, he would not allow workers in the field for twenty-four hours after spraying. There is nothing in the record to indicate whether the decision to spray in this instance was scheduled in advance or was a spur of the moment decision. Martinez testified that he was in the field all day, from 6:00 A.M. until 8:00 or 9:00 o'clock in the evening. One of the pilots testified that they started spraying about 7:30 A.M. and finished before noon. Martinez talked to the pilots, saying that they just chatted, but not about work. Martinez saw the deceased about 10:00 or 11:00 o'clock in the morning, for it was his job to check the workers. The deceased was chopping weeds cleaning cotton. Martinez' testimony was as follows:

"Q. You said you saw Mr. Hinojos working in the fields, had this field been one that was recently sprayed?

A. Not very recently.

Q. What length of time—you say not very recently, was it that day?

"A. Because I went into the field before the workers did, and it did not smell of the chemical.

Q. Had it been sprayed that day?

A. I don't remember very clearly whether it was that day very early or another day."

Other testimony reveals that this was the same day. The testimony of Martinez throughout the record presented here clearly indicates that he considered the condition dangerous when a field was "recently sprayed" or when the insecticide was "just applied." When asked whether or not any of the farmhands were in a field that had been freshly sprayed with insecticide, Martinez answered "not recently." The test as to knowledge and appreciation of a dangerous condition in such circumstances is to be subjectively applied. Massman-Johnson v. Gundolf, 484 S.W.2d 555 (Tex.Sup. Ct.1972).

In reviewing this record, this Court must be guided by the rules of Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91 (Tex. Comm'n App.1935) and Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97 (Tex.Sup.Ct. 1953). We conclude that the trial Court considered that the evidence as to warning and knowledge were not of sufficient probative force to discharge the Appellant from its duty. In reviewing the entire record, we conclude that there is sufficient evidence to support the trial Court's judgment and overrule Appellant's points one and two.

Appellant's third and fourth points of error are that there is no competent evidence to establish a causal connection between Appellant's conduct and the death of deceased, and that the trial Court erred in permitting testimony of Mr. William Champion, who was not qualified to give a medical opinion on deceased's cause of death. Dr. Frederick Bornstein, a pathologist, testified that in his opinion the deceased died from a mesenteric thrombosis. Mr. William Champion, the coroner, testified that the symptoms exhibited by the deceased were typical of insecticide poisoning. However, Dr. Bornstein testified that he did not investigate the possibility of toxic poisoning, though the deceased was admitted to the hospital with such history, and that a person poisoned by methyl parathion will have stomachache, headache, and shortness of breath. These symptoms were manifested by deceased shortly after his exposure to the insecticide. We hold there is sufficient evidence to sustain the trial Court's judgment that deceased suffered some injury, regardless of whether or not such injury was the sole cause of death. The extent of injury or damage suffered constitutes no part of a venue fact. Spoon v. Penix, 422 S.W.2d 167 (Tex.Sup.Ct. 1967). Appellant's third and fourth points of error are overruled.

In view of our finding that there is sufficient evidence to sustain the trial Court's judgment under Section 9a of Article 1995, Supra, it is not necessary to consider Appellant's fifth and final point of error that Appellees did not establish venue under Section 29a, Supra.

The judgment is affirmed.