**Omer J. MILES, Plaintiff-Appellee,**

v.

**SHELL OIL COMPANY, Defendant-Appellant.**

**SHELL PIPE LINE CORPORATION, Defendant,**

v.

**TRAVELERS INSURANCE COMPANY, Intervenor-Appellee.**

**No. 73-3203.**

United States Court of Appeals, Fifth Circuit.

Aug. 5, 1974.

Rehearing and Rehearing En Banc Denied Nov. 1, 1974.

Tracy Crawford, Mike Hatchell, Tyler, Tex., for defendant-appellant.

Russell M. Baker, Joe N. Boudreaux, Jim Foreman, Dallas, Tex., for Omer J. Miles.

Blake C. Erskine, Longview, Tex., for Travelers Ins. Co.

Robert J. Foreman, Dallas, Tex., for plaintiff-appellee.

Before TUTTLE, WISDOM and GEE, Circuit Judges.

GEE, Circuit Judge:

In this Texas diversity case, Shell Oil Company appeals from a judgment, founded on a jury verdict, in favor of an intervening workman's compensation carrier and Omer J. Miles, who was severely injured when he grasped a winch line which had become charged with electricity by contact with Shell's 440-volt overhead line. We conclude that Shell was entitled to judgment as a matter of law and hence reverse.

Some years before Miles' injury, Shell had constructed the line in question to an oil pumping unit south of Eagle Trucking Company's yard, as permitted under Shell's oil and gas lease on the premises. The lines, installed in compliance with all relevant requirements of local ordinance and state law, intruded by three or four feet upon the airspace above the fenced yard's southwest corner. On August 3, 1967, the date of the accident, Miles had been working at the yard for about three months as an overhaul mechanic. He was thoroughly familiar with the East Texas oil patch and its ways, having spent over thirty years there in roughnecking, construction and heavy-duty mechanical work. Based on this experience, as he candidly admitted, Miles knew that electric power lines were dangerous, regardless of the amount of energy carried by them and whether insulated or not, and that to contact them with a metal object was to court injury or death. He likewise admitted that he knew of the presence of the lines in question and their general location in the immediate vicinity where he was to work, and agreed that they were open and unconcealed for all to see. And though Miles strenuously denied knowing that the lines actually crossed airspace over the truck-yard, he admitted that had he been looking he would necessarily have seen that contact would occur in the incident which caused his injury.

This incident occurred when Miles' superior, Jack Hart, instructed Miles and a fellow-employee, Coley, to scavenge a burned-out truck and store the salvaged parts near the fence in the southwest corner of the repair lot—under the lines. Hart testified to the same knowledge of the lines and their dangerous nature as did Miles, but added that he was aware that they crossed the yard in that corner. After cutting off the heavy-duty front bumper of the hulk, which the evidence showed weighed several hundred pounds, Miles walked to the area under the lines while Coley backed the truck mounting the A-frame from which the bumper was suspended toward the storage area—and the lines. Miles, standing under the conductors, concentrated on the hot and swinging bumper and Coley on backing the truck. As Miles reached out to steady the bumper, contact was made by the upper part of the A-frame or winch cable with the lines, and when Miles touched the energized apparatus he was badly shocked.[1]

Texas has a well-developed body of owner-occupier liability doctrine which, under *Erie*, we must take and leave as we find it. We have already had occasion to consider and discuss most of the portions of it which are dispositive of this case in Kelley v. General Telephone Co., 485 F.2d 1315 (5th Cir. 1973). There we were called on to consider an injury to the employee of a subcontractor who was removing an old telephone line on the defendant's easement when a pole fell with him. Unknown to anyone, the pole had rotted through below ground level, producing an occult defect. In the course of affirming a verdict and judgment for the employee, we said:

> The duties owed in Texas by an occupier of premises to an invitee are well established. In Adam Dante Corp. v. Sharpe, 483 S.W.2d 452, 454

---

1. The evidence seems to indicate without dispute that the A-frame, which was easily adjustable, could have lifted and carried the bumper while set at a height which would have cleared the lines.

(Tex.1972), the Texas Supreme Court said:

> " * * * The duty is that which is summarized in Restatement (Second) of Torts § 343 (1965): § 343. Dangerous Conditions Known to or Discoverable by Possessor
>
> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger."

485 F.2d at 1318.

.    .    .    .    .    .

As the owner of the easement on which the telephone line was located, General is an occupier under Texas law. Kelley is an invitee because he was employed by an independent contractor hired by the occupier to do work on the premises. See Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425 (1950).

485 F.2d at 1318.

We then discussed Texas' *Delhi-Taylor* rule:

> As does our case, *Delhi-Taylor* concerns the liability of an occupier to an employee of an independent contractor. The independent contractor, Roy Vickers Lease Service, had been hired by *Delhi-Taylor* to extend the casing around *Delhi-Taylor*'s pipelines which were used to carry various hydrocarbons from its refinery to the docks on the ship channel. While using a dragline to uncover the pipelines, an employee of Vickers punctured one of the lines allowing a highly flammable gas to escape. Henry, the plaintiff, was welding nearby, and he was seriously burned when the drifting gas came in contact with his welding torch.
>
> Although *Delhi-Taylor* had not taken proper precautions to protect Henry, it had warned both Vickers and his foreman, Smith, "that they should treat all these lines 'as though they were loaded' and 'as if they were under pressure.'" 416 S.W. at 393.

The court noted that:

.    .    .    .    .    .

> "On the basis of the evidence set out, we hold that the warning given to Vickers and his foreman that the lines should be treated 'as though they were loaded,' when considered with their knowledge of the condition of the premises and the dangers inherent therein, was adequate to discharge Delhi-Taylor's duty to Vickers and his foreman. This holding brings us face to face with the question of whether an adequate warning to an independent contractor or one supervising his work will discharge the duty of the landowner or occupier to warn the employees of the independent contractor; and we hold it will."

Id. at 393. The court went on to say that:

> "While an owner owes a duty to employees of an independent contractor to take reasonable precautions to protect them from hidden dangers on the premises or to warn them thereof, an adequate warning to or full knowledge by the independent contractor of the dangers should and will be held to discharge the landowner's alternative duty to warn the employees."

416 S.W.2d at 394.

In *Delhi-Taylor* the nature of the warning to the independent contractor gave him full knowledge of the specific dangers involved. The contractor and his foreman—the person supervising the work—both knew that the lines on which they would be working were loaded. The Texas cases which have applied the *Delhi-Taylor* rule

have followed this pattern: (1) the contractor or his supervisor have been warned in such a manner that they either have specific knowledge of the danger involved; or, (2) the contractor or his supervisor have actual knowledge, independent of a warning from the occupier, of the dangerous condition of the premises. E. g., Koppers Co. v. Haggerty, 488 S.W.2d 600 (Tex.Civ.App., Beaumont 1972, no writ history); Keeth v. Phillips Petroleum Co., 482 S.W.2d 291 (Tex. Civ.App., Amarillo 1972, writ ref'd n. r. e.) . . . .

485 F.2d at 1320–1322.

Turning to the *Delhi-Taylor* opinion itself,[2] we find additional light:

> On many projects there are a number of independent contractors, each employing scores of workmen. The identities of some of the workmen will change from day to day. To impose the duty on the owner or occupier of the premises to know and to warn every workman on the project of a dangerous condition would subject him to an impossible burden. Moreover, an independent contractor owes a duty to his employees to warn them of dangers on the premises where they are required to work which are known to him. This duty was recognized in *Reinle.* 113 Tex. 456, 258 S.W. 803, 805. The owner or occupier should not be required to foresee and anticipate that the contractor will not discharge his duty to his own employees, and there is no sound basis for requiring that the employees should be twice warned.

416 S.W.2d at 394.

Did we remain in doubt, the Reinle case to which the Texas court refers and which it overrules in *Delhi-Taylor,* was one in which an employee of an independent contractor was electrocuted when a boom he was operating struck a high-voltage wire. The opinion had held that notice to the employee was requi-

site, though his employer had full knowledge of the danger. *Delhi-Taylor,* sharpened by its overruling of *Reinle,* is fatal to Miles' recovery in this case.

It is undisputed that Hart, Miles' supervisor, was familiar with the presence of the lines over Eagle's truck-yard in the area where he sent Miles and Coley and with the danger of contacting the lines with an A-frame such as Miles and Coley were using. There was nothing latent or hidden about the lines, as there was about the rotted pole in *Kelley;* indeed all hands agreed they were apparent to anyone who cared to look. Shell knew nothing of the work which Hart told Miles to do and " . . . should not be required to foresee and anticipate that the contractor will not discharge his duty to his own employees. . . ."

Miles offers various arguments designed to avoid *Delhi-Taylor's* thrust. It is said that Shell, an oil-and-gas operator, is not an occupier of land to which the basic legal owner-occupier matrix explicated in *Kelley* applies. We long ago held to the contrary[3] and the Texas law is clearly settled on the point. Indeed, Halpeska v. Callihan Interests, Inc., 371 S.W.2d 386 (Tex.Sup.1963), one of the basic opinions establishing the matrix, involved a gas well operator.

It is next argued that the older decision of Texas–Louisiana Power Co. v. Webster, 127 Tex. 126, 91 S.W.2d 302 (1936), establishes a different rule as to easement-holding electricity transmitters. That case involved three trespassers who lost their lives by stumbling in the night over a power line which had fallen to a point two or three feet off the ground, entirely out of the easement and below statutory minimum height. In our case, the lines were above all statutory minima, had never been the subject of complaint or prior incident, and were where Shell had a right under its lease to maintain them. *Webster* which makes plain that a critical condition of the liability there found was that

2. Delhi-Taylor Oil Corp. v. Henry, 416 S.W. 2d 390 (Tex.Sup.1967).

3. Gulf Oil Corp. v. Bivins, 276 F.2d 753 (5th Cir. 1960).

the three victims were not trespassers as to the power company's *easement* since the lines were out of it, is of no aid to Miles.

Finally, Miles argues that the *Delhi-Taylor* doctrine applies only to employees of independent contractors suing contracting owner-occupiers. The attempted limitation of the doctrine's application is ingenious, but fallacious. It is true that the doctrine arose on such facts and has chiefly been applied to them, since workman's compensation laws render irrelevant almost all negligence actions by employees against their own employers, so that the employer's duty (or want thereof) to warn his own employees of dangers known to him (or equally to them) is seldom in issue or discussed. But the Texas court's analysis in *Delhi-Taylor* is cast in terms of the broad concepts of owner-occupier and business invitee generally, reasoning from these concepts to the specifics of that case; and the doctrine has on at least one occasion been applied to employees of an owner, as in our case. Big Bend Flying Service, Inc. v. Hinojos, 489 S.W.2d 694 (Tex.Civ.App.—El Paso 1973, no writ).

In short, *Delhi-Taylor* applies, controls, and is fatal to Miles' recovery. It appears likely, as well, that a Texas court would hold as a matter of law that Miles assumed the risk involved here,[4] but the clear applicability of *Delhi-Taylor* renders a decision of that matter unnecessary. The motions of Shell for judgment on the law should have been granted.

Reversed and rendered.

---

4. Miles advances essentially two factors in the accident as negating the volenti or assumed risk defense: inattention and distraction on his part. The first stems from the fact that the wires were above and perhaps behind him as Coley's backing truck approached, out of sight and out of mind. The second is based on the approach of the hot and dangling bumper. Several recent Texas intermediate court decisions give short shrift to strikingly similar factors. Stephens v. Texas, Electric Service Co., 436 S.W.2d 572 (Tex.Civ.App.—Eastland 1969, writ ref'd n. r. e.) (goal post contacted overhead line known to decedent; summary judgment); Howard v. Jackson Electric Cooperative, Inc., 430 S.W.2d 689 (Tex.Civ.App.—Waco 1968, writ ref'd n. r. e.) (employee of drilling equipment repair park climbed on rig contacting lessor's line, which employee knew was up there; summary judgment); Montez v. Bailey County Electric Co-op., 397 S.W.2d 108 (Tex.Civ.App.—Amarillo 1965, writ ref'd n. r. e.) (power line over irrigation well; summary judgment).

Illustrative of the courts' reasoning is this passage from *Stephens* discussing *Montez*:

The facts of the Montez v. Bailey County Electric Co-operative, *supra*, are very similar to those of the instant case. The proof in the *Montez* case showed that the plaintiff knew electricity was dangerous, knew that the power lines around and in the vicinity of the irrigation wells were dangerous, and were dangerous if contact was made with them. A summary judgment was there sustained although the plaintiff showed by his affidavit that he did not know the voltage of the electric lines, that he thought the lines were insulated, that he did not know that the lines could be blown out of place, that he was concentrating on his work and did not realize that the boom was close to the lines or that the lines were blowing.

436 S.W.2d at 576.