515 F.2d 1218
 Charles F. GRAY, Plaintiff-Appellant,
v.
MARTINDALE LUMBER COMPANY, Jack Martindale and Wilmer
Martindale,Defendants-Appellees,
Northwestern National Insurance Company, Intervenor.
 No. 74-1016.
 United States Court of Appeals,
Fifth Circuit.
 July 18, 1975.
 
 Harold Peterson, Beaumont, Tex., George L. Schmidt, Houston, Tex., for plaintiff-appellant.
 John Seale, March H. Coffield, Jasper, Tex., for defendants-appellees.
 R. M. Ogden, Austin, Tex., for other interested parties.
 Appeal from the United States District Court for the Eastern District of Texas.
 Before RIVES, WISDOM and COLEMAN, Circuit Judges.
 RIVES, Circuit Judge:
 
 
 1
 Gray seeks to recover damages for an extremely severe injury to his spinal cord resulting in paralysis of both his arms and legs,[1] which occurred when a number of boards fell on him as he was attempting to unload his truck-trailer loaded with "oil field board road lumber."[2]
 
 
 2
 Gray, a 28-year-old truck driver, had been employed by Sears Truck Line, Inc. for about two months when he was directed to pick up a load of board road lumber at the Martindale Lumber Company's mill in Jasper, Texas.[3] The boards were loaded from stacks of fifty, five wide and ten high. The testimony was in conflict as to whether it was the custom to band each bundle of fifty pieces of lumber with a metal band. That would very probably have prevented the boards from falling on Gray.
 
 
 3
 At the time of his injury, Gray had about 41/2 years experience as a truck driver hauling, among other loads, "dressed" or smooth lumber in banded bundles, oil field equipment, cattle and pipe. He had quit one job when he heard how dangerous it was to haul loads of unbanded pipe. About five weeks before the accident he had hauled from the Martindale mill his only previous load of board road lumber, and it was not banded.
 
 
 4
 Gray testified that he was not familiar with board road lumber or its safe handling. There was no substantial dispute but that Sears Truck Line, Inc. and its supervisory employees and Martindale Lumber Company and its partners and supervisory employees had full knowledge of the danger of unloading board road lumber which had not been banded. It is startling that no one thought to warn Gray of that danger.
 
 
 5
 After charging the jury on the issues of negligence, proximate cause and contributory negligence, the district judge instructed the jury as follows:
 
 
 6
 "As a further defense, the Defendants contend that the Plaintiff and/or his employer or supervisor were fully aware of and appreciated any dangers involved and consequently any duty owed by the Defendants was fully discharged since the Plaintiff assumed the risk.
 
 
 7
 "In order to establish this defense of assumption of risk, the Defendants have the burden of proving that the Plaintiff or his employer or his foreman or supervisor (1) had knowledge of facts constituting a dangerous condition or activity; (2) knew the condition or activity was dangerous; (3) appreciated the nature or extent of the danger; and (4) that the Plaintiff voluntarily exposed himself to that danger.
 
 
 8
 "This defense, if established, precludes recovery by the Plaintiff even though the Defendant may be guilty of negligence proximately causing the injury." (Emphasis added.) App. 649-650.
 
 
 9
 Gray's counsel duly preserved for review the parts of the charge which have been indicated. With those parts, the practical effect of the instruction was to direct a verdict for the defendants.
 
 
 10
 The jury retired to deliberate at 3:12 P.M., Friday, September 7, 1973. At 5:27 P.M., the judge received the following note from the foreman of the jury.
 
 
 11
 " 'Dear Sir: We, the Jury, are hopelessly deadlocked on the question of negligence of Defendant, and after much discussion and two polls without a change on the vote as follows: nine votes Defendant not guilty, three votes Defendant guilty.'
 
 
 12
 "Signed: 'Fred Madenwald, Jury Foreman.' " App. 683.
 
 
 13
 The jurors were then excused until Monday morning, September 10, 1973. At 11:15 that morning, the judge gave the jury the Allen or "dynamite" charge without any admonition that the majority re-examine its position.[4] At 1:30 P.M., the jury returned its verdict:
 
 
 14
 "We, the Jury, find in favor of the Defendants, Martindale Lumber Company, Jack Martindale and Wilmer Martindale, and against the Plaintiff, Charles F. Gray." App. 684.
 
 
 15
 Judgment was entered on that verdict and this appeal ensued.
 
 I.
 
 16
 Gray's counsel relied for reversal on only two points: (1) The claimed error in the charge on assumption of risk, and (2) giving to the jury the Allen or "dynamite" charge in the form and under the circumstances of this case. Upon oral argument, the judges of this Court, sua sponte, requested supplemental briefs on the question of whether Louisiana tort law, rather than Texas tort law, should have been applied by the district court. In response, the separate briefs of the appellants and of the appellees agree on the conclusion that the substantive tort law of Texas is the proper law to be applied upon the present appeal. We agree, but find no need to labor the question of whether one or both sides might have elected to invoke the law of Louisiana. See 16 Am.Jur.2nd P 71, et seq. Since the law of Louisiana was not pled or proved, the pertinent Louisiana law must be presumed to be identical with Texas law.[5]
 
 
 17
 Neither the effort of counsel in complaining of the Allen or "dynamite" charge as given, nor the efforts of the judges of this Court in inquiring about the Louisiana law, can obviate our conclusion that this appeal must turn on whether or not the instruction on assumption of risk was erroneous.
 
 II.
 
 18
 We find that the district judge erred in instructing the jury that any knowledge of Gray's employer as to the danger in handling unbanded lumber must, as a matter of law, be imputed to Gray. Although the Texas law is far from clear, we believe that the Texas Supreme Court would not, under the circumstances of this case, hold that the knowledge of Gray's employer or his supervisor must be imputed to Gray.
 
 
 19
 Traditionally, the victim of an accident may not be charged with anyone else's knowledge. In Delhi-Taylor Oil Corporation v. Henry, Tex.1967, 416 S.W.2d 390, the Texas Supreme Court held that the owner or occupier of land owed a duty to the employees of an independent contractor who were on his land to warn them of any hidden dangers on the property, but that a warning given to the employer or to his foreman would discharge the property owner's duty. The Texas courts and federal courts applying Texas law have not extended the Delhi-Taylor rule beyond the fact pattern in that case. See Coleman v. Hudson Gas & Oil Corp., Tex.1970, 455 S.W.2d 701; Keeth v. Phillips Petroleum Co., Tex.Civ.App.1972, 482 S.W.2d 291; McWilliams v. Snap-Pac Corporation, Tex.Civ.App.1972, 476 S.W.2d 941 (dicta ); Miles v. Shell Oil Co., 5 Cir. 1974, 498 F.2d 105. In the most recent decision, the Texas appellate court said, "(W)e doubt that the doctrine of Delhi-Taylor is applicable to situations other than occupier-owner negligence cases." Rourke v. Garza, Tex.Civ.App.1974, 511 S.W.2d 331, 339.[6] This Court does not believe that the Delhi-Taylor rule should be extended to the facts of the present case. The practical consideration behind the Delhi-Taylor rule (that is, that the independent contractor would be the person best able to warn his employees) does not apply to the instant case. Here, Martindale was in a better position than was Sears to warn Gray of the danger posed by unbanded lumber. Indeed, Martindale's employees would be the only persons, other than Gray, who would know for sure that the lumber was unbanded. Furthermore, the Texas law of assumption of risk, with which we are dealing in the present case, and the law of a landlord's duty to invitees, with which the Delhi-Taylor court was dealing, have always been treated as separate concepts by the Texas courts. In Rabb v. Coleman, Tex.1971, 469 S.W.2d 384, the Texas Supreme Court said that assumption of risk "is a separate concept from 'no duty' and the applicability of one is not determined by the applicability of the other" (at 387). The assumption of risk defense never arises if the landlord has no duty to warn the invitee. In view of the harsh nature of the Delhi-Taylor doctrine,[7] we are unwilling to believe that the Texas courts would extend the Delhi-Taylor doctrine to a factual situation like that here presented.
 
 III.
 
 20
 Moreover, while the district judge purported to charge the jury on a defense of assumption of risk, his instruction amounted to a charge that as a matter of law, the defendants were relieved of or had discharged their duty to warn Gray of the danger if that was already known to Gray's employer of foreman. In its final sentence the charge itself presupposes that defendants owed Gray himself a legal obligation: "This defense, if established, precludes recovery by the Plaintiff even though the Defendant may be guilty of negligence proximately causing the injury." App. 650.
 
 
 21
 The problem may be clarified by Prosser's more exact concept of the word "duty":
 
 
 22
 "It is better to reserve 'duty' for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation. In other words, 'duty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty."
 
 
 23
 Prosser Torts 3rd ed. 331. In Delhi-Taylor, supra, the Texas Supreme Court held as a matter of law that " * * * an adequate warning to an independent contractor or one supervising his work will discharge the duty of the landowner or occupier to warn the employees of the independent contractor." 416 S.W.2d 393. The Erie-Tompkins[8] doctrine does not require or, in the light of the Seventh Amendment, permit that result in a diversity case in federal court. "It is well settled in this Circuit that in diversity cases federal courts apply a federal rather than a state test for the sufficiency of evidence to create a jury question." Boeing Company v. Shipman, 5 Cir. 1969, 411 F.2d 365, 368.
 
 
 24
 Pertinent here is the doctrine announced in Byrd v. Blue Ridge Cooperative, 1958, 356 U.S. 525, 537, 78 S.Ct. 893, 901, 2 L.Ed.2d 953:
 
 
 25
 "The federal system is an independent system for administering justice to litigants who properly invoke its jurisdiction. An essential characteristic of that system is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury and, under the influence if not the command of the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury. Jacob v. New York, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166." (Footnotes omitted.)
 
 
 26
 See also Simler v. Conner, 1963, 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691; Ross v. Bernhard, 1970, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729; Schexnayder v. Bunge Corporation, 5 Cir. 1975, 508 F.2d 1069, 1076; 9 Wright & Miller Federal Practice & Procedure § 2303; 5 Moore Federal Practice 2nd ed. P 38.09.
 
 
 27
 The judgment is reversed and the case is remanded.
 
 
 28
 Reversed and remanded.
 
 
 
 [1]
 His physician testified that Gray remains basically a quadriplegic, and that "I do not think that there will be an improvement in that condition." App. 464, 465
 
 
 [2]
 Described by Gray as follows:
 "Well, it's rough hardwood lumber, and was as was previously stated, it was approximately two to three inches thick by about seven to eight inches wide, with various lengths from ten, twelve to sixteen foot long. It is used for matting in soggy land and to build boards to build roads out of to cross this land so that you can get to the drilling site." App. 135.
 Wilmer Martindale testified that this is very green lumber and that each board weighs 120 to 130 pounds. App. 403-406.
 
 
 [3]
 It was stipulated that Gray's employer, Sears Truck Line, Inc., was an independent contractor of Martindale in hauling the board road lumber to an oil field site in Louisiana
 
 
 [4]
 Compare Sanders v. United States, 5 Cir. 1969, 415 F.2d 621, 631
 
 
 [5]
 Alexander v. Ling-Temco-Vought, Inc., Tex.Civ.App.1966, 406 S.W.2d 919; Seguros Tepeyac S.A. Compania Mexicana v. Bostrom, 5 Cir. 1965, 347 F.2d 168, 176
 
 
 [6]
 Rourke v. Garza, supra, has now been submitted to the Texas Supreme Court and we have waited for its decision, but have now decided that its decision cannot change the result of this appeal. See part III of this opinion, infra
 
 
 [7]
 See Miles v. Shell Oil Co., 5 Cir. 1974, 498 F.2d 105; Ellis v. Moore, Tex.1966, 401 S.W.2d 789
 
 
 [8]
 Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188