TUTTLE, Circuit Judge:
In this Texas diversity wrongful death action, we are required once more to consider the extent to which the Delhi-Taylor doctrine, Delhi-Taylor Oil Corp. v. Henry, 416 S.W.2d 390 (Tex.1967) is fatal to a negligence action on behalf of an injured employee of a subcontractor. We have most recently discussed this principle in Gray v. Martindale Lumber Co., 515 F.2d 1218 (5th Cir. 1975) and Miles v. Shell Oil Co., 498 F.2d 105 (5th Cir. 1974).
Here, Union 76 appeals from a jury verdict in favor of the plaintiff, personal representative of the deceased employee, Mansfield, of an independent contractor who was doing construction work for Union 76 when he was killed in an accident that occurred while he was laying pipe under high tension wires on Union 76 property.
In order to determine whether the principle announced by the Texas Supreme Court in Delhi-Taylor should, as contended here by Union 76 be fatal to recovery in the district court, we sketch the facts which the jury was justified in finding: Union 76 had hired the independent contractor, Parsons, some months earlier to relocate the high tension wires in question and Parsons had subcontracted out this particular job. At the time of the accident here complained of, Parsons had been hired on a cost plus contract to construct a 36-inch pipeline to be placed on a trestle some 30 feet above the ground and which would at a point pass under the high voltage lines. The top of the trestle or scaffold upon which the 36-inch pipe was being installed and upon which Mansfield would stand in performing his duties, was less than 10 feet from the high tension wires at this point. The piping was installed without interference with the wires by having them welded at a point away from the high tension line and skidded along the top of the trestle by a derrick operating at a safe distance. However, after Mansfield had welded or placed a shoe under the pipe it was necessary for someone to get up on top of the pipe in order to release the cable by which it had been moved into position. What happened next can best be expressed in the language of an eye witness:
“. . . [A]nd he stepped up on the end of the pipe and when he stepped up on the pipe he started to stand up and when he raised up I don’t remember if he took one step or two steps or what, but I know when he raised up I heard — it sounds similar to the blast of a shotgun, like a twelve gauge shotgun, something of that nature, and you could see fire come from this line to his head here and it was real quick, it happened real fast, and it done it again real loud, like maybe a hand grenade exploded, four times as loud as the first blast I heard, and I seen his cap fly off and his gloves fly off, he looked like he was stuck to the pipe with his heels, and all around him it looked like the best way I could describe it, to me, would be like a halo, a bright light all the way around the man, from the man to the wire and around the pipe, and I said, ‘My God, get us down,’ so I seen him, he fell off the side of the pipe and he hit the scaffold and I seen him fall back in the scaffold.”
We continue with a recitation of the facts which the jury could find. The danger posed by the presence of a high voltage *448 electric line (described in certain Texas statutes as any line carrying a voltage in excess of 600) lies not only in the possibility of actual contact by a human with the wires but also in the property of electricity of such voltage to create an arc of considerable magnitude in order to run to ground. High voltage electricity may arc at least three inches per 10,000 volts or approximately 10 inches with voltage of 34,500. The decedent, Mansfield, was killed without making actual contact with the high voltage wires when some parts of his body came close enough to cause the electricity to arc out and pass through his body to the ground. No agent of Union 76 had expressly warned Parsons, the contractor, who was Mansfield’s employer, of the dangers inherent in working within 10 feet of this high tension wire. However, some of Parsons’ employees, in a supervisory capacity over Mansfield, knew of the danger of working in the close proximity of such wires. Most of Mansfield’s immediate superiors and fellow employees were unaware of the fact that the wires were energized or live, although Parsons did have such knowledge.
Appellant must assert its Delhi-Taylor claim based upon the foregoing recitation of facts which it was within the power of the jury to find. It is the appellant’s contention that under the principle of that Texas authority, once it was proven that Parsons, the contractor for Union, knew of the danger of working within the close proximity of high tension wires this was sufficient to discharge its duty to warn the particular employee of the contractor of the threat which became an actuality and caused his death. Since the knowledge of the Parsons’ employees was not shown to be anything other than a generalized knowledge of the danger of working in close proximity to high tension wires and there is no evidence that any of them was aware of the specific danger of electrocution without making actual contact with the wires we are of the opinion that appellant tries to take Delhi-Taylor too far.
In Delhi-Taylor the court had before it a case in which the owner/occupier had actually given a warning to the contractor who was the employer of the injured plaintiff. The court said:
“On the basis of the evidence set out, we hold that the warning given to Vick-ers and his foreman that the lines should be treated ‘as though they were loaded,’ when considered with their knowledge of the condition of the premises and the dangers inherent therein, was adequate to discharge Delhi-Taylor’s duty to Vick-ers and his foreman. This holding brings us face to face with the question of whether an adequate warning to an independent contractor or one supervising his work will discharge the duty of the landowner or occupier to warn the employees of the independent contractor; and we hold it will.”
416 S.W.2d at 393. The court then went on to say:
“While an owner owes a duty to employees of an independent contractor to take reasonable precautions to protect them from hidden dangers on the premises or to warn them thereof, an adequate warning to or full knowledge by the independent contractor of the dangers should and will be held to discharge the landowner’s alternative duty to warn the employees.” (Emphasis supplied.)
Supra, at 394.
From these quotations, it is apparent that the statement that “full knowledge by the independent contractor of the dangers should and will be held to discharge the landowner’s alternative duty to warn the employees” is dictum by the Texas Supreme Court, because in the case before it, the court had already ascertained that adequate warning had been given. Nevertheless, it appears that this Court has in Miles v. Shell Oil Co., 498 F.2d 105, held that the Delhi-Taylor rule states the Texas law even with respect to that part of the Court’s opinion which was dictum. In Miles, this Court held that since Miles’ supervisor was aware of the specific “danger of contacting the lines with an A-frame such as Miles and Coley were using” the Texas law discharged *449 the landowner’s duty to warn the employee.[1]
Assuming as correct, although always subject, of course, under Erie Railroad Co. v. Tompkins, (1938), 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, to subsequent changes by the Texas courts, that the strict Delhi-Taylor standard applies in this case, we conclude that it was not met.
The essential words, needed to give any reasonable meaning to the Texas Supreme Court’s opinion are the words “adequate warning” and “full knowledge” as used by the Texas Court. We made this plain in our Miles case where we quoted with approval from Kelley v. General Telephone Co., 485 F.2d 1315, 1322 (5th Cir. 1973):
“The Texas cases which have applied the Delhi-Taylor rule have followed this pattern: (1) the contractor or his supervisor have been warned in such a manner that they either have specific knowledge of the danger involved; or, (2) the contractor or his supervisor have actual knowledge independent of a warning from the occupier, of the dangerous condition of the premises.” (Emphasis added.) Citing Koppers Co. v. Haggerty, 488 S.W.2d 600 (Tex.Civ.App., Beaumont, 1972 (No writ history); Keeth v. Phillips Petroleum Co., 482 S.W.2d 291, Tex.Civ. App., Amarillo, 1972 (writ ref’d n. r. e.). See Miles v. Shell Oil Co., 5th Cir., 498 F.2d 105 at 107.
There is a distinction between generalized knowledge of the danger to a human being who makes contact with a high tension wire (which we conclude also means the danger of coming in close proximity to it, because of the potential of errors in judgment of distance or space) and specific knowledge that the same danger exists if a person comes within close enough range so that any current will jump from the wire to the human body as it seeks to run to ground. This distinction has been recognized by the Texas court in McCoy v. Texas Power & Light Co., 239 S.W. 1105, Tex.Civ. App., a decision by the Commission of Appeals of Texas, and thus having the effect of a decision by the Texas Supreme Court. The opinion stated:
“The public knows that it is dangerous to touch a live wire, but very few know that there exists danger of death from this powerful current by near approach to the wire so charged, without actually coming in contact with the wire. Only those who are engaged in the business, and those who have stood beside some inanimate form whose scorched and burned flesh bears mute evidence to its tremendous power, know this.”
239 S.W. 1110. In Callan v. Bartlett Electric Cooperative, 423 S.W.2d 149 (Austin Tex.Civ.App. n. r. e.), the court quoted this language with approval.
We have carefully read the testimony of all of the witnesses dealing with this subject and find no evidence that any Parsons’ employee was either informed by Union 76 or had “full knowledge” or, in fact, any knowledge, of this insidious and little-known danger. Just as it was clear in the Miles case, supra, the Court can assume that the decedent knew better than to come into physical contact with the unprotected high tension wires. It is clear from the evidence that his supervisors also knew of this danger, although most of them did not know that the wires were energized. There is no evidence that any of them knew that if Mansfield or any other Parsons employee *450 came within ten inches of the wires they would literally be struck by lightning.
By post-argument brief, appellant, responding to inquiries from the bench, seeks to point out the strongest testimony dealing with this subject by quoting testimony .of one Colvin, a pipefitter foreman and an employee of Parsons. After testifying that he was aware of the danger if anyone should come into contact or in close proximity to the wires he was asked specifically: “Have you had any training in the arcing of electricity?” In response to this answer: “No, sir, I haven’t,” the following question and answer occurred:
“Q. Wasn’t it reported to you that this electricity on this occasion arced out and got Mansfield?
A. I was concerned about this, therefore, I went to the Gulf States Utilities prior to the accident and asked these people about the arcing of the electricity . . ..”
At this point, the witness was interrupted by counsel and nothing further was stated as to any knowledge he may have gained as to the principle of arcing or the distance which an arc would jump or the like.
Far from showing that the Parsons employees knew of the principle of the electric arc, this question and answer showed that Colvin did not know. It would be strange indeed if this testimony could be utilized to show that through this witness Parsons had “full knowledge” of the “specific danger” which we conclude is required to apply the Delhi-Taylor defense.
We have carefully considered the other points raised by appellant and consider them to be without merit.
The judgment is AFFIRMED.

. The exact state of the jurisprudence of this Circuit as to application of the Delhi-Taylor principle is not at all clear. Subsequent to the decision of the Miles case, this Court considered the question in Gray v. Martindale Lumber Co., supra. There, in an assumption of risk case, this Court spoke of “the harsh nature of the Delhi-Taylor doctrine,” and said: “The Texas courts and federal courts applying Texas law have not extended the Delhi-Taylor rule beyond the fact pattern in that case,” citing Coleman v. Hudson Gas & Oil Corp., Tex. 1970, 455 S.W.2d 701; Keeth v. Phillips Petroleum Co., Tex.Civ. App. 1972, 482 S.W.2d 291; McWilliams v. Snap-Pac Corporation, Tex.Civ. App. 1972, 476 S.W.2d 941 (dicta); Miles v. Shell Oil Co., 5 Cir. 1974, 498 F.2d 105. This statement seems to conflict with the holding in Miles, where the “fact pattern” was different from Delhi-Taylor. We need not resolve this conflict.